UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WILMAN CUCHIMAQUE,

                Plaintiff,

  -against-

A. OCHOA CONCRETE CORP.,
and ALCIDES OCHOA,

                Defendants.
-------------------------------------------------------X

REPORT AND
RECOMMENDATION
22 CV 6136 (RPK)(RML)

LEVY, United States Magistrate Judge:

        By order dated January 6, 2023, the Honorable Rachel P. Kovner, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted, and that plaintiff be awarded $12,912.50 in damages, plus pre- and post-judgment interest, and $6,975.20 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff Wilman Cuchimaque ("plaintiff") commenced this wage and hour action on October 12, 2022, against defendants A. Ochoa Concrete Corp. (the "corporate defendant") and Alcides Ochoa asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, dated Oct. 12, 2022 ("Compl."), Dkt. No. 1.) Plaintiff was employed as a manual laborer at defendants' construction company "A. Ochoa Concrete" from approximately May 2022 through July 2022. (Id. ¶ 6.) A. Ochoa Concrete is licensed and maintains its principal place of business in Bay Shore, New York. (Id. ¶ 11.)

Plaintiff has provided proof of service of the summons and complaint only on the corporate defendant and moves for default judgment only against the corporate defendant. (See Affidavit of Service of Nathanial Crespo, sworn to Oct. 25, 2022, Dkt. No. 8; see also Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated Jan. 3, 2023 ("Pl.'s Mem."), Dkt. No. 12, at 4.) The corporate defendant has failed to answer or otherwise move with respect to the complaint. Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to the corporate defendant on November 15, 2022. (See Request for Certificate of Default, filed Nov. 15, 2022, Dkt. No. 9.) On December 5, 2022, the Clerk of the Court noted the corporate defendant's default. (See Clerk's Entry of Default, dated Dec. 5, 2022, Dkt. No. 10.) On January 5, 2023, plaintiff moved for default judgment. (See Motion for Default Judgment, dated Jan. 5, 2023, Dkt. No. 11.) Judge Kovner referred plaintiff's motion to me on January 6, 2023. (See Order, dated Jan. 6, 2023.)

Plaintiff seeks default judgment on claims under the FLSA and NYLL for the corporate defendant's failure to (1) pay him overtime compensation, and (2) provide proper wage notices and wage statements. (See Pl.'s Mem. at 12; see also Damages Computation, attached as Ex. A to the Declaration of Jason Mizrahi, Esq., filed Jan. 5, 2023, Dkt. No. 13-1.) Plaintiff requests an award of overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest; and attorney's fees and costs.[1] (Pl.'s Mem. at 17.)

---

[1] Plaintiff originally included claims and requests for relief for spread of hours pay and failure to pay timely wages under the NYLL. (See Compl. ¶¶ 61-64, 72-75.) These claims appear to have been dropped, as they were omitted from the Motion for Default Judgment. (See generally Pl.'s Mem.)

DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, as explained above, plaintiff has demonstrated that he properly served the corporate defendant with the summons and complaint. Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on the corporate defendant in compliance with Local Rule 55.2(c). (See Affirmation of Service of Jason Mizrahi, Esq., dated July 10, 2023, Dkt. No. 16.)

   A. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)

3

(citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiffs'] allegations establish [defendants'] liability as a matter of law." <u>Id.</u>

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid overtime wages under the FLSA and NYLL and wage statement and notice violations under the NYLL.  (<u>See</u> Compl. ¶¶ 34-37, 39-44.)  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims are timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) the corporate defendant was plaintiff's employer under the FLSA and NYLL.

1. <u>Timeliness</u>

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on October 12, 2022, alleges willful violations of the FLSA.  (<u>See</u> Compl. ¶¶ 53, 54.)  Therefore, the FLSA's three-year statute of limitations applies.  Because plaintiff alleges that he was not properly paid wages May through July 2022, I find that those claims are timely under the FLSA.  Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.  <u>See</u> N.Y. Lab. L. §§ 198(3), 663(3).  Thus, plaintiff's claims are also timely under the NYLL.

2. <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendant's employee, and that defendant was an employer subject to the coverage of each statute.  For

4

purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g). Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer. An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[2] 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." Id. § 203(a).

"Employers are subject to FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)). "[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much. Aside from stating the nature of [their] work and the nature of [their employer's] business, plaintiffs must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that the was hired as a manual worker and worked for the corporate defendant from approximately May through July 2022. (See Compl. ¶¶ 6, 7; see

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

also Affidavit of Wilman Cuchimaque, sworn to Dec. 28, 2022 ("Cuchimaque Aff."), Dkt. No. 14, ¶ 4.)

In addition, plaintiff alleges that the corporate defendant had a gross annual volume of sales of not less than $500,000 per year during the relevant period and was engaged in interstate commerce as defined by the FLSA. (Compl. ¶¶ 12-14.) Furthermore, plaintiff affirmed that his work responsibilities involved handling goods that traveled in interstate commerce every day, such as cleaning supplies produced outside the State of New York. (Cuchimaque Aff. ¶ 9.) On a motion for default judgment, it is sufficient to plead facts that plaintiff "handled goods or items that originated out-of-state." See, e.g., Brummell v. K1 HVAC Inc., No. 19 CV 5488, 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that there is enterprise coverage when workers "handle goods or materials that have moved or been produced in interstate commerce.") Accordingly, I find that plaintiff has established that he is a covered employee under the FLSA and the NYLL.

3. Employer Status of the Corporate Defendant

To establish the corporate defendant's liability under the FLSA and NYLL, plaintiff must allege that it was an "enterprise engaged in commerce or in the production of goods for commerce" with the applicable statutory definition. 29 U.S.C. § 203(s)(1). As discussed above, plaintiff has sufficiently established that A. Ochoa Concrete Corp. was his employer and was engaged in commerce. (See Compl. ¶¶ 6, 7, 12-14, 36-37; Cuchimaque Aff. ¶ 4, 9.) Accordingly, plaintiff has established the liability of the corporate defendant under the FLSA and NYLL.

### B. Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests $12,871.42 for unpaid overtime wages, liquidated damages, and wage notice and statement violations. (Pls.' Mem. at 14; see also Damages Computation.) I will address each category of damages in turn for both plaintiffs.

1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted). Here, because the corporate defendant has defaulted and no employment

7

records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked. Plaintiff asserts that he worked five days per week from approximately 7:00 a.m. to 5:30 p.m. (10.5 hours per day) for a total of approximately 52.5 hours per week. (Compl. ¶ 34, Cuchimaque Aff. ¶ 10.)

  a. *Overtime Compensation*

  Plaintiff alleges that the corporate defendant willfully violated the FLSA and NYLL by failing to pay him overtime wages. (Compl. ¶¶ 49-60.) Plaintiff is entitled to compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

  To calculate the overtime compensation plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the applicable minimum wage. See Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019). Plaintiff alleges that he worked approximately 52.5 hours per week and that the corporate defendant never paid him overtime compensation. (See Compl. ¶¶ 34-37, 44.) From May 1, 2022 through May 31, 2022, plaintiff was paid $20 per hour for all hours worked. (Id. ¶ 35.) From June 1, 2022 through July 31,

8

2022, plaintiff was paid $21 per hour for all hours worked. (Id. ¶ 36.)

Because plaintiff has already been paid for these hours, the overtime wage deficiency "is calculated by multiplying the difference between the paid rate and the overtime wage rate by the total number of overtime hours worked." Sanchez v. Ms. Wine Shop Inc., No. 22 CV 2178, 2022 WL 17368867, at *12 (E.D.N.Y. Nov. 30, 2022) (citations omitted). Alternatively, plaintiff's actual compensation for overtime hours worked can be subtracted from the overtime wages that should have been paid to plaintiff based on his applicable overtime rate to achieve the same result, as demonstrated below. Based on the calculations in the below table, I respectfully recommend that plaintiff be awarded $1,681.25 in unpaid overtime wages.

| Overtime Calculation | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | OT Hours per Week | Hourly Rate of Pay | Actual Compensation for OT Hours | Overtime Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | |
| 5/1/22 | 5/31/22 | 4 | 12.5 | $20.00 | $1,000.00 | $30.00 | $1,500.00 - $1,000 = $500 |
| 6/1/22 | 7/31/22 | 9 | 12.5 | $21.00 | $2,362.50 | $31.50 | $3,543.75 - $2,362.50 = $1,181.25 |
| **Total OT Wages Owed** | | | | | | | **$1,681.25** |

    2.    Liquidated Damages

Plaintiff additionally requests liquidated damages for unpaid overtime pay. (See Pl.'s Mem. at 13; Damages Computation); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same period). Plaintiff may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y.

Sept. 7, 2012). Here, defendant has not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded $1,681.25 in liquidated damages, which is the amount equal to his unpaid overtime wages.

3. Wage Notices & Wage Statements

Plaintiff also seeks $9,550 total in statutory damages for defendant's failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Pl.'s Mem. at 14.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Elecs., Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022). NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." Id. Plaintiff asserts that he never received a wage notice or wage statements from defendant. (Compl. ¶¶ 39-43; Cuchimaque Aff. ¶¶ 16, 17; Pl.'s Mem. at 14.)

The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing." Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she

10

was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("... based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court."). These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation. 19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant damages for wage statement and notice violations. See, e.g., Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439 (E.D.N.Y. Feb. 2, 2022); Willians v. Miracle Mile Props. 2 LLC, No. 20 CV 3127, 2022 WL 1003854 (E.D.N.Y. Feb. 1, 2022).

One such court recently found that a plaintiff bringing claims under the WTPA for wage statement and notice violations is not required to show "the downstream impact on the plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and Recommendation but reversing the Report's finding that there was no Article III standing with

11

respect to the wage statement and notice violations).  In so finding, the court in Bueno emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves.  Bueno, 2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally distinct.  In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those plaintiffs that contained misleading Office of Foreign Assets Control ("OFAC") alerts.  TransUnion, 141 S. Ct. at 2208-09.  However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to prevent via the disputed provisions.  Id.  As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm.  Id. at 2209.  Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature."  Maddox, 19 F.4th at 61, 64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property

12

securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so wished—alleged by the plaintiffs, had or would likely come to fruition. Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm than those alleged in TransUnion and Maddox. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned. Bueno, 2023 WL 2387113, at *3.

Here, plaintiff alleges that defendant's failure to provide accurate wage notices and wage statements denied him his statutory right to receive true and complete information about the nature of his employment and related compensation policies. (Cuchimaque Aff. ¶ 18.) Furthermore, plaintiff asserts that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages." (Id. ¶ 19.) Therefore, I find that plaintiff has Article III standing to raise these statutory violations.

The penalty for failing to provide a wage notice is $50 per day, up to $5000. N.Y. LAB. L. § 198(1-b). The penalty for failing to provide wage statements is $250 per day, up to $5000. Id. § 198 (1-d). Plaintiff worked for the corporate defendant for a total of 91 days. (See Compl. ¶ 33.) Thus, I respectfully recommend that he be awarded $9,550 on these claims, representing $4,550 for wage notice violations and $5,000 for wage statement violations. N.Y. LAB. L. §§ 198(1-b), (1-d).

13

4. Pre-judgment Interest

Plaintiff requests pre-judgment interest. (Compl. at 13; Pl.'s Mem. at 14-15.) The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages. Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022). The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date. N.Y. C.P.L.R. §§ 5004, 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest. See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11. The midpoint of plaintiff's employment was June 15, 2022. (Pl.'s Mem. at 15.) Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $1,681.25 from June 15, 2022 to the date of this court's judgment at a per diem interest rate of $0.40 ($1,681.25 x 0.09/365).

5. Post-judgment Interest

Finally, plaintiff requests post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Moreover, post-judgment interest under Section 1961 is mandatory. See Fermin, 93 F. Supp 3d at 53. Therefore, I respectfully recommend that plaintiffs be awarded post-judgment interest under 28 U.S.C. § 1961.

### C. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. See 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198, 663(1). Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has satisfied this requirement. (See Attorney's Fees and Costs, attached as Exs. B, C to the Declaration of Jason Mizrahi, Esq., filed Jan. 5, 2023, Dkt. Nos. 13-2, 13-3.) The court next assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill,

522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff seeks an award of $6,943.75 in attorney's fees and $512.70 in costs. (See Pl.'s Mem. at 17.) The requested attorney's fees reflect the work of one attorney and one paralegal. (See Attorney's Fees and Costs.) Plaintiff's counsel requests an hourly rate of $325 for the services of Jason Mizrahi, an associate at Levin-Epstein & Associates P.C. ("Levin-Epstein") who has been practicing law since 2016. (See Pl.'s Mem. at 16; Attorney's Fees and Costs; Declaration of Jason Mizrahi, Esq., filed Jan. 5, 2023, Dkt. No. 13, ¶ 9.) "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Diaz, 2022 WL 4646866, at *13 (quotation marks and citations omitted). Furthermore, other courts have recently approved Mr. Mizrahi's requested billing rate. See, e.g., Kuan v. Notoriety Grp. LLC, No. 22 CV 1583, 2023 WL 3937317, at *13 (S.D.N.Y. May 22, 2023), report and recommendation adopted, 2023 WL 3936749 (S.D.N.Y. June 9, 2023); Sims v. Crown Waste Corp., No. 22 CV 6047, 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023). Therefore, I find that $325 per hour is a reasonable rate for Mr. Mizrahi.

Plaintiff provides no qualifications for the person identified as "Alexis Abrego" in the submitted time records and requests varied hourly rates – $110.70 per hour in one instance and $402 per hour in yet another. (See Attorney's Fees and Costs.) However, the court's online search revealed that Alexis Abrego has a LinkedIn profile including her experience as a paralegal at Levin-Epstein. "Paralegals . . . typically receive an hourly rate of $75 in this district for [FLSA] cases." Burns v. Nurnberger Corp., No. 16 CV 6251, 2018 WL 5927575, at *12 (E.D.N.Y. Sept. 17, 2018), report and recommendation adopted sub nom, Burns v. Kelly Enters.

16

of Staten Island, LLC, 2018 WL 5928106 (E.D.N.Y. Nov. 13, 2018) (collecting cases); see also Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020). Accordingly, I find that a reasonable rate for Ms. Abrego is $75.

The court next looks to the reasonableness of the number of hours billed. To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiff's counsel seeks compensation for 22 hours of work representing 19.25 hours by Mr. Mizrahi and 2.75 by Ms. Abrego. (See Attorney's Fees and Costs.) Having reviewed the submitted time records, I find the total of 22 hours to be reasonable. See, e.g., Zhang v. Asian Moon Rest. Corp., No. 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., No. 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding 35 hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case). Accordingly, I respectfully recommend that plaintiff be awarded $6,462.50 in attorney's fees.

Plaintiff additionally requests compensation for $512.70 in costs, representing $402 for this court's filing fee and $110.70 in service of process fees. (Pl.'s Mem. at 16; Attorney's Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiffs have submitted sufficient documentation for filing fees and service of process costs. (See Attorney's Fees and Costs.) Accordingly, I find $512.70 to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted. Furthermore, I respectfully recommend that plaintiff be awarded $12,912.50, representing $1,681.25 in unpaid overtime wages, $1,681.25 in liquidated damages, and $9,550 for wage statement and notice violations. I also recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $1,681.25 from June 15, 2022 to the date of this court's judgment at a per diem interest rate of $0.40. Additionally, I recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, I recommend that plaintiff receive $6,462.50 in attorney's fees and $512.70 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives

the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

        Respectfully submitted,

        /s/
        ROBERT M. LEVY
        United States Magistrate Judge

Dated: Brooklyn, New York
      July 18, 2023